# CHARLESTON.

GOODING v. OTT, STATE COMPENSATION COMMISSIONER.

Submitted January 12, 1916.   Decided January 25, 1916.

1. MASTER AND SERVANT—*Death of Servant—Workmen's Compensation Act—Territorial Operation.*

   Where a coal company of this state, with principal offices and tipple and main entrance and the principal part of its mine located in this state, has qualified under the provisions of the Workmen's Compensation Act of this state, as amended by the Acts of the Legislature of 1915, by paying the premiums of liability and by giving notice to miners employed in its mine, etc., as required by said act, the widow of a miner residing in this state and so employed therein, unless employed wholly without the state, and whose injuries resulting in his death were sustained in the course of and resulting from his employment, while temporarily at work in that part of the mine located in an adjoining state, is entitled to participate in the Workmen's Compensation fund created by said act, notwithstanding the language of section twenty five thereof, authorizing disbursements of such fund to employees who ''shall have received injuries in this state.''   (p. 487).

2. SAME—*Workmen's Compensation Act—Contractual Relation—Enforcement in Other Jurisdictions.*

   The relation of employer and employee, under said act, being voluntary and not compulsory, is contractual, the statute becoming an integral part of the contract, and limiting the rights and liabilities of employer and employee, binding upon the parties, and enforceable in other jurisdictions, unless opposed to the public policy thereof, and as all other foreign contracts are enforceable therein. (p. 493).

Appeal from State Compensation Commissioner.

Proceedings under the Workmen's Compensation Act by Daisy Gooding to obtain compensation for the death of her husband while employed by the Davis Coal & Coke Company. Compensation was denied by Lee Ott, the State Compensation Commissioner, and the petitioner appeals.

*Reversed and remanded.*

*E. A. Bowers,* for appellant.

*Frank Lively,* Assistant Attorney General, for appellee.

MILLER, JUDGE:

Petitioner, widow, complains of the order of defendant

denying her right of participation in the Workmen's Compensation Fund, on account of the death of her husband, Clyde F. Gooding, a miner, killed by coming in contact with a' trolley wire, while employed in the mine of the Davis Coal & Coke Company.

The record shows that the tipple and main works of the Davis Coal & Coke Company are located in Grant County, West Virginia, where deceased resided and was employed to work as a miner, but that at the instant of his death he was operating a motor in a part of the mine which laid in Maryland, and at a point about four hundred feet from the dividing line between the two states.

It is conceded that the Davis' Coal & Coke Company, a West Virginia corporation, with tipple and works and main offices so located in West Virginia, is of the class of "persons, firms, associations and corporations regularly employing other persons for profit, or for the purpose of carrying on any form of industry or business in this state", as provided by section nine, of the Workmen's Compensation Act, as amended by chapter nine, of the Acts of the Legislature, 1915, entitled to the benefits and protection of said act, and that deceased was at the time of his injury and death in the service of said company and employed by it "for the purpose of carrying on" its "industry or business", within the provisions of said act, and not of the excepted class, those "who are employed wholly without this state", as provided by said section.

It is conceded also that the Davis Coal & Coke Company had fully complied with all the requirements of the said chapter, and the rules of the Commissioner promulgated in relation thereto, for the month preceding the injuries and death of decedent, and had paid into the Workmen's Compensation' Fund, established under the provisions of said act, "the premiums of liability" prescribed thereby, being the "prescribed percentage of the total earnings of all employees subject to this act for such preceding month", including the earnings of said decedent, as required by section twenty four of said act, and that ten per cent. whereof was deducted from the pay of said employees including that of decedent, as likewise provided in said section, and had in all other respects complied with the requirements of said· act.

That the petitioner, ·the widow of deceased, is one of the beneficiaries or dependents of deceased, entitled to share in the distribution of said compensation fund, is conceded, unless denied that right by some other provision of the law. The reasons assigned by the defendant for rejecting her claim are, first, that by section twenty five of said act he is authorized to disburse said Workmen's Compensation Fund only to employees, or their dependents, who "shall have received in-juries *in this state,* in the course of and resulting from their employment"; second, that this act can have no extra terri-torial force or effect, and as the deceased sustained his in-juries, resulting in his death, within the boundary of the State of Maryland, petitioner is not entitled to participate in said fund, wherefore her claim was denied.

It is contended on behalf of the petitioner that this con-struction of section twenty five of the statute is too narrow, and is not in harmony with other provisions of the act, or with the humanitarian objects and purposes thereof to relieve classes of employers and employees falling within its pro-visions. It is conceded by the Attorney General, arguendo, that under the original act of 1913, there could have been no doubt of petitioner's right to participate in the fund, because by section eighteen, it was specifically provided that "A mine worker shall be deemed to be wholly employed in the state in which the tipple or principal mine entrance of the mine in or about which he works is situate"; but that the omission of this provision in the amendment of 1915 evidenced an inten-tion on the part of the legislature to deny to an employee, though not wholly employed but injured outside of the state, all relief or benefits of the fund to which he and his employer contributed and are required to contribute, not upon a pro-portion of his wages, but upon the whole amount of the wages earned by him.

Considering the objects and purposes of the statute, already indicated, and all the terms and provisions thereof, we think the Commissioner has given too narrow a construction to sec-tion twenty five of the act. True, this section does apparent-ly limit the right to such persons "as shall have received in-juries in this state", and true it is that the amendment of section eighteen, in 1915, defining a mine worker, was wholly

omitted; but it is also true that the provision of section nine, of the act of 1913, admitting employees to the benefits of the fund unless "employed wholly without this state", remains in this section, as amended in 1915. Besides by the amendment of said section eighteen there was omitted that other provision of the original act, authorizing the employer, where an employee was employed partly within and partly without the state, to apportion the pay of such employee earned within and without the state in ascertaining the percentage of wages to be paid into the compensation fund. By the amendment, omitting this provision, an employer can not now, on penalty of losing the entire benefit of the act, deduct any proportion of the wages of an employee earned without the state.

The question is presented, what did the legislature intend by these amendments? Was it intended to deprive both employer and employee of the protection provided by the act when the injuries of the employee should occur just across the line in another state, and where, as in this case, the tipple and principal works are all located within this state? We can not think so. So construed the statute would impose unequal burdens upon and give unequal protection to mine owner and miner from whom premiums are exacted. They would both be liable for benefits not received. We think it quite clear that the amendments must have had some other purpose. We can see that employers and Commissioner may have found it difficult under the original act to apportion the wages so as to determine the proper amount of premiums to be paid, and that though "tipple or principal mine entrance" was located in this state, it may have been difficult to determine whether the act applied when the mine itself, where the miners were employed, was wholly outside of the state, and where the employers and employees also resided outside the state. Such we understand to be the actual mine conditions existing in some parts of the state. If so these furnished ample justification for the amendments, and we ought not for this reason give the statute as amended a construction which would be out of harmony with other provisions of the act, and will work gross injustice to those required to contribute to the compensation fund.

That the legislature had the power to extend the benefits

and privileges of the act to employers and employees outside the state is well settled. *Mulhall* v. *Fallon,* 176 Mass. 266, 79 Am. St. Rep. 309; *In re Gould,* 215 Mass. 480, 102 N. E. 693; 1 Bradbury's Work. Comp. 42. And, while there is some conflict, it is held by high authority, and we think by the weight of authority, that when right of action for injuries or death by wrongful act is given by the state where the injuries are sustained, such right may be enforced in another state, unless the law conferring the right is opposed to some public policy of the state of the forum. *American Radiator Co.* v. *Rogge,* (N. J.) 7 N. C. C. A. 144, and note 148, and cases.

The other reason of the Commissioner, for rejecting petitioner's claim, based on the general principle that a statute can be given no extra territorial effect, and is binding on neither employee nor employer, we think should not be affirmed. It is .true that the courts of some of the states, notably Massachusetts, in the early history of Workmen's Compensation statutes, took this view, all of these decisions being controlled largely by the particular statutes involved. These cases are all collated and reviewed in elaborate notes to *In re Gould,* (Mass.) 4 N. C. C. A. 60, and *American Radiator Co.* v. *Rogge,* 7 N. C. C. A. 144, et seq., and most of which are also reviewed and criticized by Mr. Bradbury, 1 Bradbury's Work. Comp. (2nd ed.) 34, et seq. Up to the time Mr. Bradbury wrote his second edition, the cases relied on as supporting the conclusion of the Commissioner, and cited in the text, were *In re Gould, supra; Keyes Davis Co.* v. *Allerdyce, Michigan Industrial Accident Board,* April, 1913; Ruling of Wisconsin Industrial Commission, the question not in actual litigation; and the English cases of *Hicks* v. *Maxton,* (1907), 1 B. W. C. C. 150; *Tomalin* v. *S. Pearson & Son,* (1909), 2 B. W. C. C. 1; and *Schwartz* v. *Indiarubber, etc. Co.,* (1912), 5 B. W. C. C. 390. The cases taking the opposition view were *Deeny* v. *Wright & Cobb Lighterage Co.,* 36 N. J. L. J. 121; *In re Edward Schmidt,* Claim No. 6, Ohio State Lia. Bd. Awd., July 10, 1912; Op. Atty. Gen'l., Mch., 1914.

Of the leading case relied on by the Attorney General, *In re Gould, supra,* Mr. Bradbury, receding from the views expressed by him in the first edition of his work, at page 50, of the second edition cited, says: "The Supreme Judicial Court

of Massachusetts certainly stands very high. Its decision will have very great weight," but says he, "The author cannot help expressing a feeling of regret that its decision in *Gould* v. *Sturtevant (supra),* was not the other way." And in a note this writer further says: "In spite of this justification of the views formerly expressed it is asserted without hesitation by the author that he believes he gave too broad an application to the decisions under the British Compensation Act. He believes that the opinion expressed by Mr. Justice Martin in *Deeny* v. *Wright & Cobb Lighterage Co. (vide, supra,* page 39) is more in conformity with the spirit and the necessities of the development of the Compensation principle in the American states. This is especially true as to elective laws, and, to prevent difficulty, the same principle should be incorporated in every compulsory statute. That there is ample justification for such a course both on legal grounds and considerations of expediency the author has endeavored to show in the text." And at page 56, the same author, in his text, says: "Therefore, partially receding from the position taken in the first edition of this work, although that position has been sustained by eminent authority, it is believed that the doctrine which must be established finally will be, in effect, that the law of the place where a contract of employment is made will govern the rights and liabilities of employes and employers to claim and to pay compensation."

A distinction has been noted in some of the authorities between cases arising under compulsory statutes and those controlled by statute, as in New Jersey, and we think in this state, which are optional. Where the statute compels submission by the employer and employee, there is no contract, as a general rule, enforceable outside of the state. But where, as in New Jersey and in this state, the statute makes acceptance optional, and the parties freely enter into the contract of employment with reference to the statute, the statute should be read into the contract as an integral part thereof, binding the parties, and enforceable in any jurisdiction the same as any other contract. Such is the holding, and we think the correct holding with reference to Workmen's Compensation statutes generally, of the New Jersey cases of *Denny* v. *Wright & Cobb Lighterage Co.,* and *American Radiator Co.* v. *Rogge, supra,*

as well as the case of *Sexton* v. *Newark District Telegraph Co.,* 3 N. C. C. A. 569, 578.

The pivotal question then is, does a contract of employment, with reference to our statute, amount to a contract between employer and employee to be bound by the provisions of the act, when the employee is not employed wholly without the state? Section 22 of the act provides, that when the employer has complied with the act, and has given notice as required, the continuation in the service of such employer with such notice, shall be deemed a waiver by the employee, and by the parents of any minor employee, of right of action against the employer protected by the act. Prior to the enactment of Workmen's Compensation laws, right of action for injuries and death given by statute, English and American, was treated as ex delicto, and not as arising out of contract. But employment under these new Compensation acts, when elective and not compulsory, and voluntarily entered into, are treated as contracts of employment to be interpreted and enforced as all other contracts, and as binding upon the parties for injuries or death sustained in any place to which such contracts of employment extend the rights of the parties. 1 Bradbury's Work. Comp., 44, et seq. The author here reviews among cases, the case of *Schweitzer* v. *Hamburg American Line,* (N. Y.) 149 App. Div. 900, 134 Supp. 812, and the New Jersey and other cases cited herein.

It is true, as argued by the Attorney General, that the Massachusetts statute, construed in *In re Gould, supra,* contained no limitation as to time or place of employment, or injuries sustained, and it is argued from this that that statute was stronger against his position than ours, which by section twenty five, limits the benefits of the Workmen's Compensation Fund to those sustaining injuries in this state. But as we have construed the statute as a whole and with reference to all its parts, including the definition of who is an employee within the meaning of the statute, to include those employees whose employment is not wholly without the state, the statute becomes an express recognition of the right of employees, who and whose employers are required to contribute to the Compensation Fund upon the basis of the entire wages paid the employees, we think our statute is stronger in favor of the

right of such employees, to participate in the fund, than if it was silent as to time and place of employment or of injuries sustained.

As the questions considered herein are so fully covered by the authorities cited, it becomes unnecessary to extend this opinion into a further review of the decided cases. And it is sufficient to say that we turn our decision upon the proper construction of our own statute, and upon the theory of a contract, express or implied, between employer and employee, accepting the provisions of the statute, and as extending its benefits and liabilities to persons so related and to employees or their dependents injured as the decedent was in this case.

For these reasons we are of opinion to reverse the order of the Compensation Commissioner, and to direct that this decision be certified to him as provided by section forty three of the Workmen's Compensation Act, for further action by him in the premises as required thereby.

*Reversed and remanded.*