BETOR, Respondent, v. NATIONAL BISCUIT CO., Appellant.

(No. 6,455.)

(Submitted May 28, 1929. Decided July 16, 1929.)

[280 Pac. 641.]

*Messrs. Gunn, Rasch, Hall & Gunn,* for Appellant, submitted a brief; *Mr. Milton C. Gunn* argued the cause orally.

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher* for Respondent, submitted a brief; *Mr. Rankin* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment of the district court of Lewis and Clark county affirming a decision of the In-

dustrial Accident Board awarding Anna Betor $9.23 per week for 400 weeks as a major dependent of Arthur Betor, her deceased son.

Arthur Betor, son of Blibal and Anna Betor, was accidentally killed on August 6, 1926, while in the employ of the National Biscuit Company. The accident occurred when an automobile which he was driving was forced off the grade at a point in the vicinity of Saltese, Montana. At the time he was performing his duties as salesman for the National Biscuit Company, which was then enrolled under Plan One of the Workmen's Compensation Act. The decedent did not leave any beneficiary as the term is defined in section 2865, Revised Codes of 1921. The mother claiming to be a major dependent of her son, made claim under the Workmen's Compensation Act.

1. Defendant contends that the Industrial Accident Board was without jurisdiction to make any award in this case for the reason that the occupation of salesman is not hazardous within the statutory definitions. (Secs. 2847 to 2852, inclusive, Rev. Codes 1921; *Page* v. *New York Realty Co.*, 59 Mont. 305, 196 Pac. 871.) The question is debatable but in view of the conclusion to which we have come upon the facts it is not necessary to decide it.

2. The defendant also insists that in any event, under the circumstances in this case, the mother could not lawfully maintain a claim for compensation as a major dependent under the statute, which provides: " 'Major dependent' means if there be no beneficiary as defined in the preceding section, the father and mother, or the survivor of them, if actually dependent upon the decedent at the time of his injury, then to the extent of such dependency, not to exceed, however, the maximum compensation provided for in this Act.'' (Sec. 2866, Rev. Codes 1921, as amended by Chapter 121, Laws 1925, p. 206.) It is contended that the father *and* mother, not one but both, are the "major dependent," which counsel say is shown conclusively by the use of the words "or the survivor of either of them." But we shall reserve the decision of this point

also, being of the opinion that upon the merits the claimant is not entitled to prevail if there were no objection to her legal right to pursue the relief she asks.

3. By the provisions of section 2866 the right of the father and mother to compensation is made dependent upon the following conditions: (1) there must be no beneficiary as defined by section 2865, as amended by Chapter 121 of the Laws of 1925, page 206, and (2) they must be actually dependent upon the decedent at the time of his injury, and (3) to the extent of such dependency.

The record shows that Blibal Betor and Anna Betor were married in Asia many years ago. They came to the United States and have reared a family of five children, the four living being thirty years of age and upward. Arthur was the youngest child. Father and mother have lived together in harmony, each assisting the other. After Arthur completed his academic education (a part of which was in college) he went to work. When not employed by others he assisted his father on the ranch. His employment by the National Biscuit Company began in February, 1926, and he died in August of that year. Whether he contributed money to his mother and if so, how much, before he went to work for that company is not capable of definite ascertainment upon the record. When he first went to work for the company he was paid $125 a month and at the time of his death he was getting $150 or $160, depending upon his commissions. He had purchased an automobile on the partial payment plan at the price of $824.03, upon which he owed $574.03 at the time of his death. The only specific evidence that he donated anything to his mother after he became an employee of the company is contained in her testimony in which she says he made two contributions, one in May of $40 and one in June of $40.

To avail one's self of the benefit of the statute (sec. 2866, as amended) actual dependency of the claimant upon the decedent is an indispensable requisite. "Within the meaning of the statute a dependent is one who is sustained by another, or who relies for support upon the aid of another,

consistent with the dependent's necessities and position in life.'' (*Edwards* v. *Butte & Superior Min. Co.*, 83 Mont. 122, 270 Pac. 634.)

"The dependency which justifies an award is a personal dependency for support and maintenance—an actual dependency for support consistent with the dependent's position in life. It does not include the maintenance of others whom the dependent is under no legal obligation to maintain or contributions which merely enable the donee to accumulate money." (*Rock Island Bridge & Iron Works* v. *Industrial Commission*, 387 Ill. 648, 122 N. E. 830.)

"The Compensation Act does not contemplate support for any save the dependent and one cannot be said to be a dependent who has sufficient means at hand for supplying present necessities, judging these according to the class and position in life of the alleged dependent." (*Blanton* v. *Wheeler & Howes Co.*, 91 Conn. 226, Ann. Cas. 1918B, 747, 99 Atl. 494.) And see the instructive case of *McDonald* v. *Great Atlantic & Pacific Tea Co.*, 95 Conn. 160, 111 Atl. 65.

The money donated by Arthur was used by Mrs. Betor for general family expenses.

It is now appropriate to advert to the business affairs of Mr. and Mrs. Betor. For many years they conducted a store at Marysville, and apparently both participated in its management. For years the business was profitable, but with the decadence of that mining town they closed out the store and in the fall or early winter of the year 1926 moved the stock of merchandise to Helena where they disposed of it. During a portion of the time while selling the merchandise they lived in the best hotel in the city.

Through the years Mrs. Betor seems to have kept a watchful eye upon the family finances. The bank account, to which she had access—it was in fact a joint bank account—was carried in the name of Blibal Betor with a conservative Helena bank of the highest standing. With the bank Mr. Betor had unquestioned credit within limitations which cannot be called

narrow. Mrs. Betor herself handled considerable sums of money. In the year 1926 the assessment-roll of Lewis and Clark county shows that Mr. Betor's property was of the value of $21,725, and Mrs. Betor's property was of the value of $2,360. When he gave his testimony in this case Betor was the owner of two ranches, 200 head of cattle, a number of horses, and other property, none of which was mortgaged. As illustrative of his banking activities: On January 7, 1926, he borrowed from the bank $2,500, due in three months; on March 8, 1926, he borrowed $1,000 due in three months; on April 7, 1926, when the first note came due, he paid $1,000 thereon and renewed the note for $1,500, due July 9, 1926; on May 7, 1926, he borrowed $3,200, due August 11, 1926, and on May 26, 1926, he borrowed $500, due August 11, 1926; on June 7 he renewed the note of March 8 with a new note to fall due June 23, 1926. On January 1, 1926, he owed the bank approximately $6,000, and on December 31st of that year he owed it approximately $4,500, thus having reduced his indebtedness $1,500 during that year. All of the notes were signed by him personally and were unsecured. During the year 1926 there were issued upon the Betor account a large number of checks and many deposits were made. The checks aggregate $34,564.86 and the deposits $35,150.46. He testified at the hearing before the Industrial Accident Board that his total indebtedness was about $11,000. The record shows that Mr. Betor has always borne the reputation of being a shrewd trader and a dependable business man. In Marysville he also bore the reputation of being a "good provider for his family."

In view of the foregoing, testimony given to show the impecuniosity of the Betors, or of Mrs. Betor, is little short of ludicrous. Of course, all of us could use more money to advantage.

That Arthur made donations to his mother is not evidence of her dependence upon him. (*Morgan* v. *Butte Central M. & M. Co.*, 58 Mont. 633, 194 Pac. 496.) It is testimony that

Arthur was a fine fellow, possessed of an understanding heart. While he knew his mother was far from wanting the necessities of life, it may be surmised he knew some extra money would enable her, without recourse upon the family purse (always carefully guarded by her) to purchase, if she chose, some of those things attractive to the feminine eye which under ordinary circumstances she would not afford. Regardless of this, that his mother could use the money to good advantage is clear enough and such might be said to be the universal rule in families not fortunate enough to be wealthy. But such conditions do not fulfill the requirement of the statute.

We have hitherto adverted to the reasons which brought about the enactment of the Compensation Acts. (*Cunningham* v. *Northwestern Improvement Co.*, 44 Mont. 180, 199 Pac. 554; *Lewis and Clark County* v. *Industrial Accident Board*, 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268; *Shea* v. *North Butte Mining Co.*, 55 Mont. 522, 179 Pac. 499; *Dosen* v. *East Butte Copper Min. Co.*, 78 Mont. 579, 254 Pac. 880; *Edwards* v. *Butte & Superior Min. Co.*, supra.)

The law contemplates that the burden of caring for dependents shall not fall upon the public in general but upon the industry. There is, according to the record, not even a remote probability that Mrs. Betor by reason of the death of her son will become a burden upon the community. Blibal Betor and his wife were helpmates. They seem to have carried out the injunction of the statute: "Husband and wife contract toward each other obligations of mutual respect, fidelity and support." (Sec. 5782, Rev. Codes 1921.) "The husband must support himself and wife out of his property or by his labor. If he is not able to do so she must assist him, as far as she is able." (Sec. 5784, Id.) The parties are in good health and the husband seems fully able to support his wife and the evidence indicates that he has always done so. There is no case of dependency here. The difference between this case and one where there was a dependency will be found in striking con-

trast by examining the opinion of this court in *Edwards* v. *Butte & Superior Min. Co.*, supra. Here we have a wife who has, and has had, unrestricted access to her husband's bank account, which has been ample for their needs at all times. It surely needs no argument to support the proposition that a woman living with her husband who is amply able to support, and who does support, her according to her station in life, is not dependent upon a son who occasionally contributes sums of money for her use.

The Industrial Accident Board and the trial court gave ▮ undue weight to certain statements of the claimant but overlooked the controlling and undisputed facts. The positive assertions of a witness cannot be taken alone, without regard to what he says elsewhere in his testimony. "The legal value of a body of evidence is to be determined by its entire content and not by any single feature, the effect of which may be destroyed by admissions or contradictions emanating from the same source." (*Hood* v. *Murray*, 50 Mont. 240, 146 Pac. 541; *Bachman* v. *Gerer*, 64 Mont. 28, 208 Pac. 891.)

The judgment is reversed with direction to the district court to enter judgment for defendant.

ASSOCIATE JUSTICES MATTHEWS and GALEN concur.

ASSOCIATE JUSTICES FORD and ANGSTMAN: We dissent. Under our statute which provides for compensation to a major dependent "to the extent of such dependency" one partially dependent on the deceased is entitled to compensation. This court recognized this rule in *Edwards* v. *Butte & Superior Mining Co.*, 83 Mont. 122, 270 Pac. 634.

Mrs. Betor testified that deceased contributed to her about forty dollars per month in cash, which she used to buy "clothing and grub"; the record indicates that some contributions had been made for five or six years. This was corroborated by her husband, father of the deceased, who also testified that Mrs. Betor was partially dependent on Arthur for

a living and that she required his assistance. These witnesses were uncontradicted on this point.

If the decedent rendered material assistance in maintaining the mother in a "condition suited to her station in life," compensation will not be denied to her on the ground that her husband was also providing her with some of the necessities of life. (28 R. C. L. 779; *Rock Island Bridge & Iron Works* v. *Industrial Commission*, 287 Ill. 648, 122 N. E. 830; *Ogden City* v. *Industrial Commission of Utah*, 57 Utah, 221, 193 Pac. 857; *Paul* v. *State Industrial Acc. Com.*, 127 Or. 599, 272 Pac. 267, 273 Pac. 337; *Conners* v. *Public Service Electric Co.*, 89 N. J. L. 99, 97 Atl. 792.) Nor will the fact that the mother had some property and other sources of revenue prevent a finding that she is partially dependent. (*Rhyner* v. *Hueber Bldg. Co.*, 171 App. Div. 56, 156 N. Y. Supp. 903.) And partial dependency may exist even though a showing is made that without the contributions claimant could have subsisted. (*Peabody Coal Co.* v. *Industrial Commission*, 311 Ill. 338, 143 N. E. 90.)

This court in *Edwards* v. *Butte & Superior Min. Co.*, supra, quoted with approval from Honnold on Workmen's Compensation, volume 1, section 70, the following: "It follows that dependency does not depend on whether the alleged dependents could support themselves without decedent's earnings, or so reduce their expenses that they would be supported independent of his earnings, but on whether they were in fact supported in whole or in part by such earnings, under circumstances indicating an intent on the part of deceased to furnish such support." In fact, the test applied by the authorities generally is not whether the claimant would have been without the necessities of life in the absence of the contributions but rather, were the contributions actually made and relied upon? (*Richardson Sand Co.* v. *Industrial Co.*, 296 Ill. 335, 129 N. E. 751; *In re Carroll*, 65 Ind. App. 146, 116 N. E. 844; *Appeal of Hotel Bond Co.*, 89 Conn. 143, 93 Atl. 245; *Gonzales* v. *Chino*

*Copper Co.*, 29 N. M. 228, 222 Pac. 903; *Texas Employers' Ins. Assn.* v. *Peterson* (Tex. Civ. App.), 251 S. W. 572.)

Regarding the bank account referred to in the majority opinion, the witness Blibal Betor testified that he borrowed large sums of money and was buying and selling cattle, and when the cattle were shipped he would pay the money back. He testified that he was indebted at the time of the hearing before the Accident Board in the sum of $11,000; that while he had been successful in business in Marysville when the town was thriving, that condition did not obtain at the time of the hearing or at the time of the death of decedent. Marysville once had a population of 3,000 people but at the time of the hearing there were but a few families there. That during the past few years he had not been successful in business, and that his ranch property cannot be sold. Claimant testified that she at one time operated a store in Marysville but that she did not make interest on the investment and that the property owned by her cannot be sold.

The uncontradicted testimony shows that deceased had made contributions of $40 per month for five or six years. While it is true that the only specific instances testified to were two contributions, one in May and one in June, of $40 each, if greater detail was desired so that a more accurate test could be made, it was the duty of defendant to elicit the details on cross-examination. (*Leach* v. *J. I. Case Threshing Machine Co.* (S. D.), 219 N. W. 884.)

Here the Industrial Accident Board had before it sufficient competent evidence of a partial dependency. In its findings it commented favorably upon the demeanor of the witness Anna Betor and upon the effect of her testimony. Under the rule frequently announced by this court, if there is any substantial evidence to support the finding and decision of the board, its action should not be reversed by the courts. (*Morgan* v. *Butte Central M. & M. Co.*, 58 Mont. 633, 194 Pac. 496; *Edwards* v. *Butte & Superior Min. Co.*, supra.)

492

It is our opinion that the lower court did not err in affirming the finding and decision of the Industrial Accident Board and that the judgment should be affirmed.

Rehearing denied October 4, 1929.