CORBETT v MONTGOMERY WARD & CO, INC

Docket No. 130455. Submitted May 19, 1992, at Lansing. Decided July 6, 1992, at 9:45 A.M.

Jerry D. Corbett was awarded workers' compensation benefits for a continuing work-related disability suffered during the course of his employment with Montgomery Ward & Co., Inc. The amount of benefits to be paid was based in part on the magistrate's finding that the plaintiff's wife was his dependent at the time of his injury. The defendant appealed, and the Workers' Compensation Appellate Commission affirmed. The defendant appealed by leave granted.

The Court of Appeals *held:*

The Workers' Compensation Appellate Commission did not err in finding that the plaintiff suffered a work-related disability and was entitled to workers' compensation benefits, but did err in determining that the plaintiff's wife was his dependent for purposes of computing his disability benefits. The evidence indicates that the plaintiff did not provide more than one-half of his wife's support at the time of his injury and that, therefore, she was not a dependent for purposes of MCL 418.353; MSA 17.237(353). On remand, the WCAC must recompute the benefits due the plaintiff without including his wife as a dependent.

Affirmed in part, reversed in part, and remanded.

WORKERS' COMPENSATION — HUSBAND AND WIFE — DEPENDENTS OF INJURED EMPLOYEE.

The spouse of an injured employee is not a dependent for purposes of determining the employee's entitlement to workers' compensation benefits where, at the time of the injury, less than one-half of the spouse's support was provided by the injured employee; the entire amount of support that the spouse received from all sources, including support that the spouse supplied, must be considered (MCL 418.353[1]; MSA 17.237[353] [1]).

REFERENCES

Am Jur 2d, Workers' Compensation §§ 379 *et seq.*
See the Index to Annotations under Workers' Compensation.

*Rapaport, Pollok, Farrell & Sablich, P.C.* (by *Steven J. Pollok*), for the plaintiff.

*Crippen, Urquhart, Cmejrek & Weber* (by *James R. Cmejrek*), for the defendant.

Before: DOCTOROFF, C.J., and JANSEN and CORRIGAN, JJ.

CORRIGAN, J. Defendant appeals by leave granted from an award of workers' disability compensation benefits to plaintiff and his wife. We affirm in part, reverse in part, and remand.

Plaintiff, an electronics and appliance repair technician, was employed by defendant from 1972 until September 30, 1985. For the last several of those years, his work essentially involved appliance repair for defendant's residential customers. His job often required lifting or moving heavy objects, sometimes with assistance and sometimes alone.

On April 25, 1985, plaintiff injured his back while moving a sixty-pound television back onto a stand in a customer's home. He later sought medical attention from a company physician and from an orthopedic surgeon, Dr. Trager. He was hospitalized briefly. On August 30, 1985, Dr. Trager authorized plaintiff to return to work, provided that he not lift anything heavier than twenty-five pounds.

Plaintiff's supervisor would not allow him to return to work under that condition. Plaintiff then obtained a "no restrictions" release from Dr. Trager and reported to work again on September 30, 1985. When he appeared, however, he was informed that he was being laid off. He has not been employed by defendant since then. He received unemployment compensation benefits for a

period of twenty-six weeks in 1985-86. In 1985, plaintiff earned $531.60 a week, or an annual salary of $27,643.20; his wife earned between $16,000 and $20,000 for the same period.

Plaintiff sought other employment, first in Michigan and later in Florida. He and his wife moved to Florida, where plaintiff thought he had secured a position with another retail chain, but the job fell through. Plaintiff has since earned a limited income selling real estate and mobile homes in Florida.

Defendant voluntarily paid plaintiff workers' compensation benefits for the period of April 25 to September 30, 1985, but refused further payment, claiming that plaintiff was no longer disabled. Plaintiff filed a claim with the Bureau of Workers' Disability Compensation in 1986. In June 1987, before the hearing on the matter, plaintiff was examined again by Dr. Trager and also by defendant's medical expert, Dr. DeBruin. Both medical witnesses, as well as plaintiff himself, testified at the hearing on plaintiff's compensation claim.

The magistrate found that plaintiff had suffered a continuing work-related disability and ordered that defendant pay him $316.54 a week. That figure was based in part on the magistrate's finding that plaintiff's wife, "who was working, but making less than her husband," was plaintiff's dependent at the time he was injured.

Defendant appealed the magistrate's decision to the Workers' Compensation Appellate Commission, which affirmed in a split decision. The majority determined that plaintiff's wife had been his dependent at the time of injury:

> To effectuate the purpose of the statute, we hold that of [sic] purposes of determining the dependency of a spouse living with a worker at the time

of a disabling injury, the income of the injured worker and that of the spouse (if any) shall be treated as joint income, so that whenever an injured worker makes an amount at least equal to that of the spouse, the injured worker is providing half or more of the spouse's support, if there is no other source of household income to be factored in.

\* \* \*

Since the plaintiff here earned in excess of $27,000 and the spouse made $20,000 at the most liberal interpretation of the testimony, she would be a dependent for worker's compensation purposes. Even assuming that plaintiff's spouse earned $20,000 per year, her average weekly wage of $384.62 would be less than one-half of the household's average weekly wage of $916.22, i.e., the amount to which their standard of living was geared.

The dissenting commissioner agreed with the disability finding but concluded that the benefit award had been computed incorrectly, because plaintiff's wife should not have been found to be his dependent.

[Plaintiff's wife earned] $307.69 to $384.62 on a weekly basis. Even at the lesser figure of his wife's estimated wages, plaintiff clearly did not provide one-half or more of her support at [the] time of injury. Presuming both spouses to have enjoyed the same standard of living, half of their combined weekly wages of $839.29 went for plaintiff's support and half for his wife's. Each received, therefore, $419.645 [sic] on a weekly basis. Even the lowest estimated amount earned by plaintiff's spouse, $307.69, is much more than one-half of $419.645 [sic]. Since plaintiff's spouse received less than one-half of her support from plaintiff at [the] time of injury, she cannot be considered his dependent.

Defendant appeals. We affirm the opinion of the

appellate commission with respect to the finding of disability but reverse and remand with regard to the dependency issue.

I

Under the provisions of MCL 418.301(1); MSA 17.237(301)(1), "[a]n employee, who receives a personal injury arising out of and in the course of employment . . . shall be paid compensation." At the time of plaintiff's injury, the statute defined "disability" as "a limitation of an employee's wage earning capacity in the employee's general field of employment resulting from a personal injury or work related disease." MCL 418.301(4); MSA 17.237(301)(4).

The role of this Court in reviewing decisions of the WCAC was recently clarified in *Holden v Ford Motor Co,* 439 Mich 257, 261-263; 484 NW2d 227 (1992). The Court first cited 1985 PA 103, which created the WCAC and made other changes in the workers' compensation statutory scheme:

> Under Act 103, beginning October 1, 1986, . . . findings of fact by a workers' compensation magistrate were to be considered conclusive, on administrative appellate review by the WCAC, if supported by "competent, material, and substantial evidence on the whole record." MCL 418.861a(3); MSA 17.237(861a)(3).
>
> * * *
>
> Act 103 did not change the standard for judicial review of final decisions in workers' compensation proceedings. . . . Act 103 provides that the findings of fact made by the WCAC, not the findings of the magistrate, are to be conclusive, on judicial appellate review, in the absence of fraud.
>
> . . . [J]udicial review by the Court of Appeals or this Court of a WCAC decision is to be of the findings of fact made by the WCAC and not the

findings of fact made by the magistrate. And the findings of fact made by the WCAC are conclusive if there is any competent evidence to support them.

Applying *Holden,* then, we examine the findings of fact of the WCAC in this case. After reviewing the record in detail, we do not hesitate to conclude that the WCAC's finding of disability is supported by "competent evidence." Defendant's own expert, Dr. DeBruin, recommended that plaintiff be restricted from lifting objects exceeding thirty pounds. While he did not agree with Dr. Trager's diagnosis of a herniated disk and attributed plaintiff's problem to degenerative disk disease, he agreed that part of the "stresses" that contributed to that degeneration included plaintiff's years of lifting while employed by defendant.

Furthermore, plaintiff himself provided extensive evidence of permanent impairment from his 1985 injury. In a pre-*Holden* case, the Supreme Court held that "testimony of plaintiff and his wife, without more, and even though arguably disputed by certain medical witnesses, is sufficient to support the [Workers' Compensation Appeal Board's] finding of disability." *Sanford v Ryerson & Haynes, Inc,* 396 Mich 630, 637; 242 NW2d 393 (1976).

The WCAC's finding that plaintiff's layoff was related to his disability is similarly acceptable. The magistrate concluded that defendant was "not convinced that plaintiff had recovered, a conclusion more than amply supported by the record." We also find sufficient evidence in the record to justify this conclusion. For example, two days before plaintiff was laid off, his position was filled by a newly hired worker, suggesting plaintiff was laid off because of his injury, not for economic reasons.

We therefore affirm the WCAC's finding that plaintiff suffered a work-related disability, making defendant liable for compensation to him.

II

The workers' compensation system also provides for the compensation of dependents of an injured worker. MCL 418.353(1); MSA 17.237(353)(1) provides in part:

(a) The following shall be conclusively presumed to be dependent for support upon an injured employee:

(i) The wife of an injured employee living with such employee as such wife at the time of the injury.

* * *

(b) . . . Except as to those conclusively presumed to be dependents, no person shall be deemed a dependent who receives less than ½ of his support from an injured employee.

Subsection (a)(i), *supra,* was found unconstitutional in *Pike v Wyoming,* 431 Mich 589, 594-595; 433 NW2d 768 (1988). The *Pike* Court followed *Day v W A Foote Memorial Hosp,* 412 Mich 698, 701; 316 NW2d 712 (1982), which had held that surviving spouses "are required to prove their dependency in fact" to receive compensation under MCL 418.331; MSA 17.257(331), the statute providing for survivor's benefits to dependents of workers who die in the course of their employment.[1] See

---

[1] The *Day* decision was mandated by the United States Supreme Court's determination in *Wengler v Druggists Mutual Ins Co,* 446 US 142; 100 S Ct 1540; 64 L Ed 2d 107 (1980), which had invalidated a similar statute from Missouri, finding that it violated the Equal Protection Clause of the United States Constitution by discriminating in favor of surviving wives without according similar benefits to surviving husbands.

also *Costa v Chrysler Corp,* 152 Mich App 530, 535; 394 NW2d 6 (1986).

Absent the conclusive presumption, the statute requires that a dependent wife must receive more than one-half of her support from an injured employee. As the Supreme Court said in an early case, "Where the facts are undisputed, dependency becomes a legal conclusion." *Garbutt v Stoll,* 287 Mich 396, 405; 283 NW 624 (1939). See also *Compton v Ford Motor Co,* 337 Mich 654, 658-659; 60 NW2d 191 (1953) (adult daughter living with father was not a dependent).

This Court has the power to review questions of law involved with any final order of the WCAC if timely application is made under the court rules. MCL 418.861a(14); MSA 17.237(861a)(14). See *Barr v Stroh Brewery,* 189 Mich App 549, 551-552; 473 NW2d 716 (1991) (legal conclusion of WCAC not insulated from appellate review); *Tagliavia v Barton Malow Co,* 185 Mich App 556, 560; 463 NW2d 116 (1990) (review limited to questions of law). MCL 418.861a(14); MSA 17.237(861a)(14) is substantially identical to MCL 418.861; MSA 17.237(861), which referred to the Workers' Compensation Appeal Board, the predecessor of the WCAC. See *Aaron v Michigan Boiler & Engineering,* 185 Mich App 687, 703; 462 NW2d 821 (1990). A decision of the WCAB could be reversed if the board operated within the wrong legal framework or if its decision was based on erroneous legal reasoning. *McDonald v Meijer, Inc,* 188 Mich App 210, 214; 469 NW2d 27 (1991). See also, e.g., *Flint v General Motors Corp,* 184 Mich App 340, 343; 457 NW2d 157 (1990) (decision of the WCAB reversed where it erred in applying effective date of statutory amendment); *Juneac v ITT Hancock Industries,* 181 Mich App 636, 639; 450 NW2d 22 (1989) (WCAB erred in awarding supplemental ben-

efits to the plaintiff); *Spencer v Clark Twp,* 142 Mich App 63, 66; 368 NW2d 897 (1985) (WCAB erred in not applying statute retroactively); *Morris v Metals Engineering Mfg Co,* 122 Mich App 404, 407; 332 NW2d 495 (1983) (WCAB erred in computing the plaintiff's average weekly wage). The same rule applies in our review of decisions of the WCAC, to the extent that the *Holden, supra,* rule regarding factual findings is not relevant.

We turn, then, to an examination of the dependency standard set out in MCL 418.353; MSA 17.237(353). The rule that "no person shall be deemed a dependent who receives less than ½ of his support from an injured employee" parallels the test for dependency adopted by Congress as part of the income tax provisions of the Internal Revenue Code. "[T]he term 'dependent' means any of the following individuals *over half of whose support,* for the calendar year in which the taxable year of the taxpayer begins, *was received from the taxpayer.*" 26 USC 152(a) (emphasis supplied).[2]

In the absence of Michigan case law regarding the determination of dependency, cases interpreting the federal statute are instructive. The federal rule is quite clear; a taxpayer must provide more than one-half of the alleged dependent's *support* to claim that person as a dependent—not simply more "support" than the alleged dependent provides for himself. The court must consider "the entire amount of support which the individual received from all sources, including support which the individual himself supplied." *Turecamo v Comm'r of Internal Revenue,* 554 F2d 564, 569 (CA 2, 1977), citing Treas Reg § 1.152-1(a)(2)(i). The

[2] A spouse is not considered a dependent under the tax code. See 26 USC 152(a)(9).

taxpayer must prove both the total amount expended for an alleged dependent and that the amount provided by the taxpayer is more than one-half of that amount. *Rountree v Comm'r of Internal Revenue,* 456 F2d 1110, 1111 (CA 6, 1972) (child support); *Hogg v United States,* 428 F2d 274, 283 (CA 6, 1970) (same); *Klofta v United States,* 333 F Supp 781, 782 (ND Ohio, 1970) (same).

*Snyder v United States,* 321 F Supp 661 (D Colo, 1970), aff'd 445 F2d 319 (CA 10, 1971), is virtually on point. The plaintiff there provided his mother with $1,020 in support and wished to claim her as a dependent. His mother, however, had $1,290 in other income (social security, rental, and interest). The court agreed with the IRS that the plaintiff was not entitled to a dependency exemption for his mother. "It is clear . . . that the plaintiff did not in fact provide his mother with over one-half of her support." *Id.* at 663. See also *Ammons v Dunbar & Sullivan Const Co,* 54 Mich App 107, 109-110; 220 NW2d 323 (1974), where the Court reversed a WCAB decision and held that a mother who received social security payments was only partially dependent on her son, even though she chose not to expend her own income for her support.

The WCAC erred in the method it applied to determine whether plaintiff's wife was his dependent for purposes of computing his disability benefits. The question turns on whether plaintiff provided more than one-half of his wife's support. We assume that plaintiff and his wife pooled their income and that each spouse used half of that total for "support." We also assume, absent contrary evidence, that neither spouse had any unearned income in 1985, or earned income other than that described at the 1987 hearing.

Plaintiff earned $531.60 a week in 1985,[3] for an annual salary of $27,643.20. His wife earned "$16,-000 to $20,000" that year. If we adopt the highest figure offered, then, the couple's joint income was $47,643.20, or $916.22 a week. Half of $916.20 equals $458.10; half of $458.10 (i.e., half of plaintiff's wife's support) is $229.05.[4] Mrs. Corbett's $20,000 salary is equivalent to a weekly income of $384.62, which is well in excess of $229.05. It cannot be said, then, that plaintiff provided more than one-half of his wife's support. Accordingly, she was not a dependent for purposes of MCL 418.353; MSA 17.237(353).

We remand this matter to the WCAC for recomputation of the benefits due the plaintiff from his date of injury, based on a rate determined without the inclusion of his wife as a dependent. Defendant is, of course, entitled to set off benefits already paid, plaintiff's other earned income, and his unemployment compensation benefits. In all other respects, however, the decision of the WCAC is affirmed.

Affirmed in part, reversed in part, and remanded. No costs, neither party having prevailed in full.

---

[3] Defendant listed plaintiff's pay rate as $13.27 an hour in the original proceeding. For a forty-hour week, plaintiff would have earned $530.80, but the magistrate found his average weekly wage to be $531.60. We have adopted the latter figure, which has not been challenged on appeal.

[4] Plaintiff's own half of the joint income is not considered a contribution to his wife's support. See *Garbutt v Stoll, supra* at 405 ("So much of the earnings of deceased as was needed and necessarily used for his individual care and support is not to be treated as a contribution by him to the support of his dependents.")